## ALFRED E. NORTON CO. v. BYERS.

(Circuit Court of Appeals, Second Circuit. May 12, 1915.)

No. 230.

1. MASTER AND SERVANT ⬥➡190—LIABILITY FOR INJURIES—NEGLIGENCE OF FOREMAN.

Labor Law N. Y. (Consol. Laws, c. 31) § 200, as amended by Laws 1910, c. 352, makes employers liable for injuries to employés caused by the negligence of any person intrusted with superintendence or with authority over any employé in the performance of his duty. Defendant was constructing the iron work of a building, and the F. Co., another independent contractor, the concrete. Defendant's general foreman, who had five or six assistants, and who moved the workmen from place to place on the work and to other jobs as he chose, went to a hoist of the F. Co., which was about to descend, and directed two of the workmen to go with him. One of such workmen was thrown from the hoist and killed by the sudden stopping thereof. The F. Co. had posted a notice forbidding persons from riding on the hoist, but there was evidence that the foremen used the hoists whenever they chose, that the foreman in question used them pretty nearly every day without objection from the F. Co.'s superintendent, and that this was the general practice on jobs in that city. *Held*, that the foreman's direction to the employés to go with him on the hoist was within the scope of his activities, and was a direction of the employé in the performance of his duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. ⬥➡190.]

2. MASTER AND SERVANT ⬥➡289—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

Whether the employé was himself negligent in going upon the hoist, in view of his knowledge that they were constantly used by the foremen, and in view of the fact that the foreman was also going on the hoist, was a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ⬥➡289.]

3. MASTER AND SERVANT ⬥➡289—ACTIONS FOR INJURIES—ADMISSIBILITY OF EVIDENCE.

Where the point was made that the employé was an experienced ironworker, and should have known that it was improper and unsafe to ride on the hoist, it was not error to admit evidence as to the general practice on jobs in that city of riding on such hoists.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. ⬥➡289.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a judgment in favor of defendant in error, who was plaintiff below. The action was brought

⬥➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

under the New York Employers' Liability Act (chapter 31 of Consolidated Laws, as amended by chapter 352, Laws of 1910) to recover damages for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence, in that its foreman ordered deceased to get upon a hod hoist used in the construction of a building, which the foreman knew was an unsafe hoist for people to ride on, whereupon either through a defect in the hoist, or negligence of an engineer, or both, an accident resulted, causing injuries to intestate from which he died.

Amos H. Stephens, of New York City (E. J. Redington, of New York City, of counsel), for plaintiff in error.

Ralph Gillette, of New York City, for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). [1] The defendant and a fireproofing company as independent contractors were engaged in erecting a building. The former was putting up the iron work; the latter, the concrete. Byers was an iron worker in the employ of defendant. Defendant maintained ladders (and later, as the structure progressed, stairs) for the use of its employés to pass from floor to floor. The fireproofing company maintained and operated several hod hoists to carry concrete to the upper floors. These hoists were not intended for passengers; they had no safety devices. All appear to agree, and the jury certainly found on abundant proof, that the use of one of these hoists was an unsafe way to pass from upper to lower stories. At the entrance to all these hoists there was a notice which read as follows:

"Warning.

"This hoist is for material only; all persons are forbidden to ride, stand on, or stand in shaft under penalty of instant dismissal.

"National Fireproofing Company."

At or about 10 a. m. on the day of the accident the deceased and one Finnegan were working on the eighth floor (next to the roof) carrying beams to put over the top of windows for lintels, when Foreman Swansberg appeared and told them that he wanted them to go to another job. He went over to a hod hoist on the same floor, but, failing to make connection with it, he ordered the two men to follow him up the ladder to the roof, where the fireproofing company was concreting. Callan, the subforeman of the fireproofing company, was then standing on the hoist, which held two empty wheelbarrows, and he was apparently about to descend with it. As Swansberg stepped upon it he called to Finnegan and deceased, "Come on, youse." Callan then stepped off. The two empty iron wheelbarrows had been pushed onto the hoist from the Sixth avenue side of the platform and stood side by side, occupying the whole width of the platform of the hoist, with their handles extending toward Sixth avenue. The foreman and the two workmen then stepped on, Callan pulled the bellcord to signal the engineer, and the hoist descended. McCabe, the engineer of the fireproofing company, who was operating the hoist, noticed that when

a little below the second floor it was wobbling a little bit; thereupon he suddenly stopped it, with the result that Byers and one of the wheelbarrows were thrown off.

The section (section 200) of the statute relied upon makes the employer liable for personal injury caused to an employé, who is himself in the exercise of due care and diligence at the time, "by reason of the negligence of any person in the service of the employer intrusted with any superintendence, or by reason of the negligence of any person intrusted with authority to direct, control or command any employé in the performance of the duty of such employé." As the warning notice stated "dismissal" as the penalty for disobedience, it might be construed as being directed solely to the employés of the fireproofing company, whom alone that company could dismiss. But it is not necessary to give it any such construction. It may be assumed that the notice forbade any and every one from riding on these hoists. It may also be assumed that as the testimony showed, defendant had instructed its superintendent and all its foremen not to let its employés ride on the hoists and not to use them themselves. There was abundant evidence to support a finding that these warnings and orders had become a dead letter; that the foremen used the hoists whenever they chose; that Swansberg (the foreman in question) used them "pretty near every day"; that the superintendent of the fireproofing company knew of this and made no objections; that this was the general practice on jobs in New York City, even when the signs were up.

We find no proof that the men used the hoists regularly; apparently they had to walk; the foremen were the privileged characters. Swansberg was general foreman, with five or six assistants; he moved deceased and the other workmen from place to place on this job, and from this to some other job, just as he chose. If he directed deceased to come with him down the hoist to go to another place or another job, as the evidence indicates he did, we do not see why such direction was not within the scope of his activities, why it was not a direction of the employé in the performance of the duty of such employé. The court left it to the jury to say whether or not the words "Come on, youse," were a direction. They found that it was, and, as it seems to us, correctly so found.

[2] They also found that deceased was not himself negligent. That was clearly a question for them. We have no first-hand information as to the extent of Byer's knowledge as to these hoists. He had seen them constantly used by foremen without any mishap; probably envied them their privilege when he saw them doing so. Moreover, as Swansberg did not say "go," but "Come with me," it would probably not occur to deceased that he was being directed to take a serious risk of life or limb.

[3] The charge was very fair and careful, and we find no error in it. The admissibility of testimony as to the use of hoists on other jobs was fairly arguable, but a point was made that deceased was "an experienced iron worker," and therefore should have known that it was improper and unsafe to ride on a hoist such as this. We do not think it was error to show what his experience had probably taught

him, namely, that it was common practice to do so, tolerated, so far as he knew, by employers. He had never been told not to do so, so far as the testimony shows.

The judgment is affirmed.